JOSÉ IBÁÑEZ RIVERA, peticionario, *v.* HON. GUY J. SWOPE, GOBERNADOR DE PUERTO RICO, demandado.

Núm. 349.—*Sometido:* Febrero 4, 1941. *Resuelto:* Febrero 7, 1941.

Celestino Iriarte, F. Fernández Cuyar y H. González Blanes, abogados
del peticionario;  Hon. Procurador General George A. Malcolm,
R. García Cintrón y Pablo Defendini, Subprocuradores Auxiliares,
abogados del querellado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

La Junta Insular de Elecciones certificó al Gobernador que en las últimas elecciones generales celebradas en Puerto Rico el 5 de noviembre del año pasado, el peticionario resultó electo Representante a la Cámara por el quinto distrito representativo, y el Gobernador, en cumplimiento de la ley, le expidió el correspondiente certificado de elección.  Posteriormente, el 28 de diciembre último, el peticionario dirigió al Gobernador una comunicación presentándole la renuncia de dicho cargo para tener efecto inmediatamente, negándose éste a aceptar tal renuncia, alegando que no podía permitir ni dar curso a la misma hasta tanto el peticionario no hubiera aceptado, jurado y tomado posesión de su cargo ante la Cámara de Representantes de Puerto Rico, alegando además el Gobernador que tal renuncia deberá dirigirse entonces al Presidente de la Cámara de Representantes para que por éste sea remitida a él.

Radicó el peticionario solicitud de mandamus contra el Gobernador el 28 del mes pasado, y habida cuenta de que la Asamblea Legislativa de Puerto Rico, por disposición de la Ley Orgánica, no abrirá sus sesiones hasta el segundo lunes del corriente mes, o sea el 10 del actual, expedimos el auto condicional de mandamus y señalamos la vista del caso para el 4 del corriente mes, a las dos de la tarde, fecha en que comparecieron las partes, y sustituído el Gobernador originalmente demandado, que lo era el Hon. José M. Gallardo, por el actual incumbente, Hon. Guy J. Swope, radicó el demandado

su contestación, en la que luego de aceptar los hechos alegados en la solicitud, alegó como defensas especiales que este tribunal carece de jurisdicción para expedir el auto que se solicita y que la petición no aduce hechos constitutivos de causa de acción.

■■ Las dos defensas especiales están basadas en la contención del querellado al efecto de que un miembro de la Legislatura no puede renunciar su cargo hasta tanto no haya prestado juramento y tomado posesión del mismo, y que entonces la renuncia deberá presentarla por conducto del Presidente de la Cámara para la cual hubiere sido electo. Invoca en su apoyo el artículo 32 de la Ley Orgánica, que dice así:

"Artículo 32.—El Senado y la Cámara de Representantes, respectivamente, serán los únicos jueces de las elecciones, escrutinios y capacidad de sus miembros, y tendrán y ejercerán todas las atribuciones, con respecto a la dirección de sus procedimientos, que usualmente corresponden a cuerpos legislativos parlamentarios. Ambas Cámaras se reunirán en la capital el segundo lunes de febrero después de la última elección, *y se organizarán eligiendo un Presidente, un secretario y un macero para cada Cámara, y los demás empleados y auxiliares que necesitaren."* (Bastardillas nuestras.)

El precepto de la Ley Orgánica contenido en su artículo 32, dispositivo de que el Senado y la Cámara de Representantes, respectivamente, serán los únicos jueces de la *elección, escrutinio y capacidad de sus miembros,* ha sido tomado de la sección 5, artículo I, de la Constitución de los Estados Unidos, y ésta a su vez lo tomó de la práctica seguida en Inglaterra. 1 Blackstone's Comm. 163, 178, 179. Era necesario confiar esta importante facultad a algún funcionario u organismo y como dice el Juez Story en su obra *"Commentaries on the Constitution of the United States",* tomo 1, pág. 604, si esta facultad se confiriera a otro organismo que no fuera el propio cuerpo legislativo, la independencia, la pureza y aun la propia existencia y medios de acción de dicho cuerpo podrían ser destruídos o puestos en inminente peligro.

Pero este privilegio por sus propios términos y por la razón que lo inspira, está limitado a aquellas cuestiones que de manera efectiva puedan afectar la determinación sobre la validez de la elección, del escrutinio o de la capacidad de sus miembros. Así vemos, por ejemplo, que la Corte de Apelaciones de Nueva York, interpretando esta cláusula, se ha expresado en los siguientes términos:

"Es verdad que el Congreso es el juez de la capacidad de sus propios miembros y que el Congreso está actualmente en sesión. Pero es nuestro deber exigir a los oficiales públicos del Estado que cumplan con las leyes del Estado... No se ha expedido todavía certificado de elección a ningún candidato; el escrutinio no ha sido transmitido a la Cámara de Representantes, *y ninguno de los dos candidatos ha sido todavía aceptado ni ha prestado juramento del cargo como miembro. El certificado de elección crea un derecho prima facie y debe exponer un resultado verdadero.* Si el certificado se hubiera expedido ya y *el representante hubiera jurado su cargo,* la situación sería distinta y envolvería entonces cuestiones de las cuales no intentaríamos conocer. Pero *hasta que el certificado haya sido enviado a la Cámara correspondiente y se haya actuado sobre el mismo, las cortes del Estado están abiertas al candidato que alegue que se va a expedir el certificado en violación de la ley." People ex rel. Brown* v. *Suffolk County* (1915) 216 N. Y. 732. (Bastardillas nuestras.)

El mismo principio se aplicó *a contrario census* en *Burchell* v. *State Board of Election Commrs.,* (1934) 252 Ky. 823, 68 S. W. (2) 427. En dicho caso la Junta Estatal de Comisionados de Elección había expedido certificado de elección a un candidato al Congreso y había certificado el resultado al secretario de la Cámara de Representantes, y el candidato había prestado juramento del cargo y empezado a cumplir los deberes del mismo. Otro aspirante al mismo cargo recurrió a los tribunales en solicitud de un auto de *injunction* mandatorio dirigido a la Junta de Comisionados de Elección, ordenándole que le extendiese un certificado de elección. Resolvió la corte que carecía de jurisdicción para conocer del caso, toda vez que la acción establecida era esencial-

mente una controversia electoral (*election contest*) y la facultad para juzgar sobre la elección y capacidad de sus miembros radica exclusivamente en el Congreso. Véase la monografía en 107 A.L.R. 205, citada por el propio querellado, en la cual se analizan distintos casos, entre ellos los dos últimamente citados.

¿Se infringe o se violenta en manera alguna la letra o el espíritu de dicho precepto constitucional por el hecho de que un representante electo que aun no ha aceptado ni jurado su cargo presente su renuncia al Gobernador y éste la acepte, cuando aun no se han reunido ni organizado las Cámaras que acaban de elegirse en las últimas elecciones celebradas en noviembre del año pasado?

A nuestro juicio no está envuelta en este caso una cuestión de validez de (*election contest*), escrutinio o capacidad del miembro renunciante. Tampoco puede en manera alguna afectar la independencia, la pureza ni la existencia ni medios de acción de la Cámara de Representantes. Habiéndose expedido al peticionario el certificado de elección, su elección es prima facie válida hasta que la Cámara de Representantes resuelva lo contrario, si él se dispusiera a tomar posesión del cargo (*Brown* v. *Suffolk County,* supra), y nada le impide renunciar el derecho que tiene a presentarse a la Cámara de Representantes a tomar posesión del cargo para el cual fué electo. La propia Ley Orgánica, en su artículo 30, le reconoce un derecho a renunciar y es al Gobernador a quien incumbe nombrar su sucesor. A este efecto prescribe el citado artículo:

"Artículo 30.—(*Según fué enmendado por ley del Congreso aprobada en 1º. de junio de 1938.)*—El término del cargo de los senadores y representantes electos en cualquier elección general será de cuatro años, *comenzando el segundo día de enero siguiente a la fecha en que se celebre tal elección.* En caso de ocurrir una vacante en el cargo de senador o representante, por razón de defunción, *renuncia,* o cualquier otra causa, el Gobernador, a propuesta del comité central del partido político a que pertenezca tal senador o representante, nombrará para cubrir tal vacante un senador o representante de

dicho partido político, quien desempeñará su cargo por el resto del término para el cual fué electo su antecesor.'' (Bastardillas nuestras.)

Arguye el querellado que la facultad de renunciar sólo existe después de tomar posesión y jurar el cargo, pero la ley no distingue entre una renuncia presentada antes y la presentada después de tomar posesión, como tampoco distingue entre la vacante producida por el fallecimiento de un miembro acaecido antes o después de tomar posesión, y donde la ley no distingue los tribunales no deben distinguir. La actuación del Gobernador al aceptar la renuncia del peticionario no impide que cuando el que lo sustituya intente tomar posesión, la Cámara haga la investigación correspondiente y resuelva lo que proceda, ya que los derechos del nombrado por el Gobenador se derivan de los del que renunció, y si la elección de este último no le daba derecho a tomar posesión del cargo, por ser nula, tampoco le daría ese derecho al sustituto nombrado por el Gobernador.

Pretender como pretende el querellado que el peticionario tome posesión y jure su cargo para que entonces pueda presentar la renuncia, es un absurdo manifiesto. La ley no requiere cosas inútiles, e inútil sería obligar al peticionario que acepte un cargo para que inmediatamente lo pueda renunciar. ¿Por qué no renunciar antes de aceptarlo? Además, al tomar posesión de un cargo es preciso prestar juramento de que se acepta y se cumplirá bien y fielmente con los deberes del mismo, y que el juramento se preste sin reservas mentales y sin propósito de evadirlo. ¿No equivale a obligar al peticionario a prestar un juramento falso cuando ya él ha manifestado su firme propósito de no aceptar, y por consiguiente de no cumplir los deberes del cargo para el cual fué electo?

El querellado invoca a su favor el artículo 207 del Código Político, que en lo pertinente dice así:

"Art. 207. Las renuncias de empleos y cargos deberán hacerse por escrito del modo siguiente:

''.

"2. Las hechas por los miembros de la Cámara de Delegados, esté o no en sesión la Asamblea Legislativa, se dirigirán al Presidente de la Cámara, quien deberá inmediatamente trasmitirlas al Gobernador."

Asumiendo a los efectos del argumento que el artículo 207 del Código Político esté en vigor—ya que por sus propios términos se comprende que es obsoleto, toda vez que trata de reglamentar una situación que ha variado desde que se aprobó la actual Carta Orgánica creando dos Cámaras legislativas electas por el voto popular en lugar de la Cámara de Delegados electa por el pueblo y el Consejo Ejecutivo de nombramiento presidencial—aun así, asumiendo que esté en vigor dicho artículo, repetimos, el mismo contempla una situación que no existe en estos momentos, es decir, que haya un Presidente de la Cámara a quien presentarle la renuncia. En el caso de autos aun no existe un Presidente a quien presentar tal renuncia, pues aunque el término de los Representantes electos empezó el 2 de enero último, las Cámaras no se reunirán ni organizarán hasta el 10 del actual, y será en esa fecha que se elegirán sus respectivos presidentes. A nuestro juicio es de aplicación el artículo 208 del Código Político, que dice:

"Art. 208. Queda vacante un cargo al ocurrir cualquiera de los siguientes casos, antes de vencerse el período de su duración: ... (3) Su renuncia, debidamente aceptada, disponiéndose, que si la persona que hubiere sido elegida para un cargo público *no desea cumplir con los requisitos y tomar posesión de su cargo, podrá presentar su renuncia al Gobernador antes que principie el período del cargo,* y la aceptación de dicha renuncia surtirá el efecto de crear una vacante en dicho cargo *el primer día del período para el cual fué elegida dicha persona...*" (Bastardillas nuestras.)

Arguye el querellado que no existe deber ministerial por parte del Gobernador de aceptar la renuncia del peticionario y que por consiguiente no procede el auto de *mandamus*.

Como hemos demostrado, el peticionario tiene derecho a renunciar su cargo presentando su renuncia al Gobernador por no existir un presidente de la Cámara para la cual fué electo,

y ese derecho del peticionario crea el deber recíproco del Gobernador de aceptarle su renuncia sin condición alguna. Siendo ello así, es un deber ministerial del Gobernador aceptar la renuncia al peticionario, y negándose a ello como se niega, procede obligar el cumplimiento de ese deber mediante el auto de mandamus que se solicita.

*Procede, por lo expuesto, declarar con lugar la petición y expedir en este caso un auto de mandamus perentorio.*