LIGGETT & MYERS TOBACCO COMPANY, INC., peticionaria y ape-
lante, *v.* RAFAEL BUSCAGLIA, TESORERO DE PUERTO RICO,
demandado y apelado.

Núm. 8895.—*Sometido:* Mayo 2, 1944.  *Resuelto:* Julio 28, 1944.

*H. S. McConnell,* abogado de la apelante; *Hon. Procurador General Interino Jesús A. González (M. Rodríguez Ramos* en el alegato) y *P. A. Rodríguez Forteza, Procurador General Auxiliar,* abogados del apelado.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

La cuestión a resolver en el presente recurso es si mediante un auto de *mandamus* el Tesorero de Puerto Rico puede ser compelido a devolver en sellos de rentas internas el valor de los que fueron fijados y cancelados en artículos tributables enviados desde los Estados Unidos a Puerto Rico y destruídos antes de llegar a esta Isla por haber sido hundido por acción enemiga el vapor que los traía.

No existe controversia alguna en cuanto a los hechos de este caso. La apelante, dueña de una fábrica de cigarrillos establecida en Richmond, Virginia, allá para los meses de enero y febrero de 1942 compró al agente del Tesorero de Puerto Rico en Nueva York (*Puerto Rico Stamp Agent*)· sellos de rentas internas de las denominaciones de cuatro y ocho centavos por la cantidad total de $71,760, a fin de embarcar una cantidad de cigarrilos para Puerto Rico. Fijó y canceló la totalidad de los sellos en los paquetes de cigarrillos, y los embarcó dirigidos a San Juan y Ponce por el vapor Bárbara de la Bull Insular Line, el cual salió de Baltimore, Maryland, allá para el 24 de febrero de 1942. El Bárbara fué hundido por acción enemiga, y con tal motivo tanto los cigarrillos como los sellos de rentas internas adheridos a los paquetes fueron destruídos. La apelante notificó al demandado la pérdida del embarque, y solicitó información sobre el procedimiento a seguir para lograr la emisión y en-

trega de nuevos sellos en sustitución de los perdidos, o en su defecto obtener crédito por su valor. Accediendo a lo solicitado por la apelante, el jefe del Negociado de Arbitrios del Departamento de Hacienda, en comunicación del 20 de abril de 1942, le indicó los datos y comprobantes que debía suministrar, y el 28 de mayo siguiente la apelante presentó todá la documentación exigida por el Departamento. El 17 de agosto de 1942 el Subtesorero de Puerto Rico notificó a la apelante que su reclamación había sido denegada, motivando su decisión la equivocada creencia de que lo que solicitaba la apelante era el reembolso del precio de los sellos en vez de la emisión y entrega de otros en sustitución de los perdidos. El 7 de diciembre siguiente la apelante pidió al apelado que reconsiderase su resolución, y siete días después la reconsideración fué denegada, expresándose por el Tesorero como motivo de su negativa que los precedentes que existían en los records del Departamento no eran aplicables al caso de la apelante porque todos ellos se referían a casos en que los sellos habían sido de algún modo mutilados en poder del comprador local. En solicitud de un auto de *mandamus* acudió entonces la apelante para ante la corte inferior, la cual, luego de oír la prueba y argumentación de las partes, denegó la petición.

Al comenzar el juicio en la corte a quo, la demandante, a preguntas del juez, hizo la siguiente manifestación:

"Admitimos que no hay estatuto aprobado por la Legislatura que específicamente cubra estos casos, admitimos que no hay reglamento escrito sobre esa materia,[1] pero tenemos una opinión del *Attorney General* sobre el asunto y además tenemos estos testigos que van a declarar que ésa ha sido la práctica sin interrupción por más de veinte años, de devolver sellos destruídos."

[1] La sección 94 de la Ley de Rentas Internas de Puerto Rico, Leyes de 1925, págs. 585, 649, prescribe:

"El Tesorero de Puerto Rico dictará los reglamentos que fueren necesarios para dar cumplimiento a las disposiciones de esta Ley y que no se opusieren a la misma; pero hasta que nuevos reglamentos sean dictados por el Tesorero, continuarán en toda su fuerza y vigor las reglas y reglamentos vigentes en la actualidad, siempre que no estén en conflicto con esta Ley."

A tal extremo descansó la peticionaria para el éxito de su acción en la alegada práctica administrativa, que de ser ésta ilegal o inaplicable a su caso, la petición de *mandamus* deberá ser denegada.

Veamos el alcance de la práctica administrativa. Tomamos de la declaración del testigo de la demandante, Florencio Picó, jefe del Negociado de Arbitrios:

"P. ¿Usted podría explicarle a la corte cuál es la práctica, si existe alguna en Tesorería, para la redención de sellos deteriorados o dañados? . . .

". . . R. La práctica que se ha venido siguiendo en Tesorería por algunos años, según tengo entendido, es una práctica rudimentaria. Hay un contribuyente que trae cigarrillos a Puerto Rico, . . . esos cigarrillos traen sus sellos de rentas internas pegados. Pasado algún tiempo el contribuyente encuentra que los cigarrillos se han dañado, entonces solicita del Tesorero de Puerto Rico que se le destruyan los cigarrillos esos, para que se le devuelvan los sellos o el equivalente en sellos que se han destruído en los cigarrillos en las cajetillas. Entonces el Tesorero de Puerto Rico solicitaba del Auditor de Puerto Rico que se nombrara un oficial de Auditoría para que conjuntamente con un oficial de Tesorería, un agente de rentas internas destruya el número de cajetillas de cigarrillos dañadas, tomando nota de los sellos correspondientes que también son destruídos, y entonces se hace un certificado, cuyo certificado firman tanto el agente de Auditoría como el agente de Tesorería.

"P. ¿Quién destruye los sellos ésos? R. El agente del Tesorero y el agente del Auditor, conjuntamente, y hacen el certificado.

"P. ¿A quién le envían el certificado ése? R. Copia del certificado viene al expediente del caso, tengo entendido que se enviaba una copia al Auditor de Puerto Rico, al Tesorero.

"P. ¿Qué hace el Tesorero y el Auditor de Puerto Rico o funcionarios del gobierno correspondientes, después que tienen en su poder el certificado? R. Bueno, la práctica ha sido que después que ellos tienen el certificado, el Auditor de Puerto Rico ordena, mediante la autorización de una carta de crédito, a que le entreguen nuevos sellos correspondientes a aquellos dañados.

"P. ¿A quién se dirige esa orden de crédito? R. Bueno, en el caso de sellos vendidos en New York, la orden se mandaba allá al

vendedor de los sellos de New York. Yo quisiera que me rectificara el empleado que tiene que ver con ese asunto, por si acaso he dicho algo [erróneo].''

Declarando sobre el mismo extremo, manifestó Luis Santaella, testigo de la apelante:

"Desde que estaba en la Colectiva y en el negocio éste, la práctica había sido siempre restituir los sellos dañados con una simple carta al Tesorero, pidiendo se restituyeran esos sellos dañados. Por ejemplo, en la Colectiva nosotros cancelábamos los sellos en la fábrica, es decir, se le ponía de acuerdo con la ley el nombre del fabricante, la fecha en que se usaban.

". . . Con mucha frecuencia teníamos que recoger los cigarrillos que después de cuatro o cinco semanas con el clima de Puerto Rico, debido a la humedad se dañaban, . . . le escribíamos al Tesorero, el Tesorero mandaba un agente y autorizaba la restitución de los sellos.''

Y José Maldonado, tenedor de libros en Auditoría, testigo del apelado, declaró que desde hacía diez o doce años estaba familiarizado con la práctica administrativa; que en ningún caso en que él hubiera intervenido se renovaron o reemplazaron sellos sin que los agentes de Tesorería y Auditoría presenciaran su destrucción, y que la práctica administrativa estaba limitada a tres casos: (1) cuando los cigarrillos se ponían viejos y sus dueños pedían la destrucción del artículo y el reintegro de los sellos adheridos a los mismos; (2) cuando los sellos se inutilizaban al pegarse en la fábrica; y (3) cuando los cigarrillos se mojaban en el barco que los traía y se hacían inservibles.

Refiriéndose a la mencionada práctica administrativa invocada por la apelante, se dice en la opinión de la corte sentenciadora:

"Yendo a los méritos del caso nos encontramos que en la vista no se presentó como prueba ni tampoco se nos ha llamado la atención sobre reglamento alguno que haya sido promulgado por el Tesorero a virtud del cual este último se haya impuesto la obligación de reintegrar el importe de sellos de rentas internas destruídos o deteriorados antes de ser usados, o en la alternativa de emitir nuevos sellos de la misma clase o denominación en sustitución de los destruídos.

No alega la demandante que haya reglamento alguno escrito. Es su contención, sin embargo, que en ocasiones anteriores (la prueba reveló solamente cinco casos), y con motivo de haberse dañado cigarrillos sobre los cuales ya se habían fijado y cancelado los sellos de rentas internas correspondientes, el Tesorero permitió y autorizó la destrucción de sellos y cigarrillos y ordenó la emisión de nuevos sellos para sustituir los destruídos. En los casos aludidos por la peticionaria, y en los cuales el Tesorero emitió nuevos sellos, ya los cigarrillos habían sido *introducidos* en Puerto Rico, y por tanto, ya gravitaba sobre ellos el arbitrio impuesto por la sección 16 de la Ley de Rentas Internas, importando poco a tal efecto que después de *introducidos* en la Isla se hubieran dañado, pues de acuerdo con la sección 39 de la Ley de Rentas Internas, inmediatamente después de introducidos constituían materia tributable y venían obligados a pagar la contribución. Si ello es así, no comprendemos cómo pudo el Tesorero adoptar una actitud que no tenía otro efecto legal que el de condonar una contribución, cosa que no podía legalmente hacer este funcionario sino únicamente el poder legislativo y ello únicamente dentro de las limitaciones marcadas por la Ley Orgánica.''

La apelante critica fuertemente esta conclusión de la corte inferior. Sostiene que es errónea especialmente en cuanto asegura que la práctica seguida en el Departamento de Hacienda es ilegal. Y alega que el error de la corte estriba en no haber tomado en cuenta que la introducción de cigarrillos en Puerto Rico no fué declarada tributable hasta el 12 de agosto de 1943, fecha en la cual entró en vigor la Ley núm. 116 de 12 de mayo de 1943, Leyes de Puerto Rico, 1943, pág. 335, y que con anterioridad a esa fecha el único impuesto a que estaban sujetos los cigarrillos era por su venta, traspaso, uso o consumo.

A nuestro juicio no está en lo cierto la corte sentenciadora al exigir que para que exista un reglamento válido es necesario que éste conste por escrito y haya sido promulgado por el Tesorero. La prueba, tanto de la peticionaria como del demandado, reveló la existencia de la práctica administrativa, concluyentemente evidenciada por el hecho de que tan pronto la peticionaria se dirigió al Departamento

informando la pérdida de los sellos y solicitando información con respecto al procedimiento a seguir para obtener el reintegro de los mismos, inmediatamente el Departamento informó a la apelante todos los detalles del procedimiento para obtener el reintegro de los sellos. Ese procedimiento concuerda perfectamente bien con el descrito por los tres testigos que declararon sobre ese particular. No era indispensable que la práctica constase por escrito. *Haas* v. *Henkel,* 216. U. S. 462, 480.

Es también errónea la conclusión de la corte sentenciadora al efecto de que la práctica administrativa era contraria a la ley y por consiguiente ilegal, basando esa contención en que cuando a virtud de la referida práctica el Tesorero emitía nuevos sellos y reintegraba los dañados o destruídos ya los cigarrillos habían sido introducidos en Puerto Rico y por tanto ya gravitaba sobre ellos el arbitrio impuesto por la sección 16 de la Ley de Rentas Internas. El argumento de la corte inferior está basado en una premisa falsa. La Ley de Rentas Internas de 1925 no imponía ningún arbitrio a los cigarrillos introducidos en Puerto Rico hasta que éstos eran vendidos, traspasados, usados o consumidos en esta Isla. Es verdad que por la Ley núm. 17 de 3 de junio de 1927 (pág. 459) la introducción de cigarrillos se hizo tributable, pero esa disposición tuvo una vida efímera, pues en la próxima sesión legislativa, por la Ley núm. 36 de 23 de abril de 1928 (pág. 227), fué eliminado el impuesto sobre introducción de cigarrillos, quedando éstos como en 1925 sujetos a arbitrio cuando eran vendidos, traspasados, usados o consumidos en Puerto Rico, de suerte que aunque hubiesen sido introducidos en Puerto Rico, mientras no se hubiese realizado uno de estos cuatro actos—venta, traspaso, uso o consumo—el impuesto no gravitaba. Por consiguiente, al reintegrar los sellos el Tesorero no estaba condonando una contribución, como erróneamente sostiene la corte inferior en la cita que de su opinión hemos hecho. No

fué hasta que se aprobó la Ley núm. 116 de 1943 que la introducción de cigarrillos en Puerto Rico volvió a ser tributable.

.El hecho de que en los casos que por vía de ilustración presentó la apelante en la corte sentenciadora para probar la práctica administrativa los empleados de Tesorería y Auditoría tuviesen a la vista los sellos mutilados o inservibles por haberse ya cancelado en artículos inservibles para la venta, traspaso, uso o consumo, no impide que la práctica administrativa sea aplicable al presente caso, donde los sellos no pudieron ser vistos por los empleados, toda vez que se perdieron al hundirse el vapor que traía el cargamento. La apelante demostró concluyentemente que había comprado los sellos al agente del Tesorero en Nueva York, que los había adherido a los paquetes, que éstos habían sido embarcados por el Bárbara y que el vapor fué hundido. Lo esencial era que se demostrase la pérdida o mutilación de los sellos antes de que el artículo estuviese sujeto al impuesto, y esa circunstancia quedó probada por la evidencia que a petición del Departamento presentó la apelante, evidencia que no ha sido en forma alguna controvertida por el apelado.

La obligación por parte del Tesorero de devolver los sellos no era discrecional. La práctica establecida demostraba que probados determinados hechos, es decir, los que exigió el Departamento a la apelante, el Tesorero venía obligado a reintegrar los sellos. Podría existir discreción en el Tesorero a los efectos de determinar si efectivamente los sellos se habían perdido o destruído, pero una vez admitido este hecho, cesó la discreción por parte del funcionario y surgió entonces el deber ministerial de dar cumplimiento a la práctica que él mismo se había impuesto, sancionada por el artículo 94 de la Ley de Rentas Internas. *Ibáñez* v. *Swope, Gobernador*, 58 D.P.R. 20; *Miguel* v. *McCarl*, 291 U. S. 442, y *Roberts, Treasurer* v. *United States*, 176 U. S. 221. El caso

de *Montgomery Ward and Company, etc.* v. *United States* (1941), 94 C. Cls. 309, en el cual pone gran énfasis la corte sentenciadora para sostener la improcedencia del *mandamus,* no es aplicable sencillamente porque en ese caso se interpretó un estatuto que autorizaba al Administrador General de Correos de los Estados Unidos a devolver a su discreción el valor de los sellos que hubieren sido fijados sobre cualquier materia postal en relación con la cual no se hubiese prestado ningún servicio por el correo o se hubiere cobrado en exceso de la tarifa. Pero como ya hemos indicado, demostrada en el caso de autos la pérdida de los sellos antes de ser introducida la mercancía en Puerto Rico, y por consiguiente antes de estar sujeta a tributo, surgió el deber ministerial por parte del Tesorero de reintegrar los sellos.

■ La circunstancia de que en el presente caso la apelante hubiese obtenido de la compañía aseguradora el valor de los sellos perdidos no es un impedimento para la institución y prosecución de este pleito, pues al instituirlo la apelante lo ha hecho para beneficio y en representación de la compañía aseguradora. *Luckenbach* v. *McCahan Sugar Co.,* 248 U. S. 139, y Monografía en 96 A.L.R. 864.

■ Por último, la contención del Tesorero al efecto de que el Auditor de Puerto Rico era una parte necesaria en este pleito fué correctamente desestimada por la corte *a quo* basándose en lo resuelto en los casos de *Laborde* v. *Municipio de Isabela,* 38 D.P.R. 65, y *Pérez Soto* v. *Corte de Distrito,* 38 D.P.R. 80. Podríamos agregar, como alega la apelante, que no existe precepto legal alguno que imponga al auditor el deber ministerial de intervenir en estos casos. La intervención que ha tenido el Auditor en relación con la práctica administrativa ha sido a requerimiento del Tesorero, enviando un empleado de su departamento para presenciar la destrucción de los sellos.

*Procede por lo expuesto revocar la sentencia apelada y en su lugar dictar otra declarando con lugar la petición de*

*mandamus y ordenando al secretario de este Tribunal que expida un auto perentorio de mandamus dirigido al demandado para que inmediatamente proceda a reintegrar a la apelante sellos de rentas internas para cigarrillos en las siguientes cantidades y denominaciones : 809,500 de ocho centavos y 175,000 de cuatro centavos.*