The Standard Commercial Tobacco Company, Inc., peticionaria, *v.* Tribunal de Contribuciones de Puerto Rico, demandado; Tesorero de Puerto Rico, interventor.

Núm. 174.—*Sometido:* Mayo 3, 1948. *Resuelto:* Junio 9, 1948.

*E. T. Fiddler, José G. González, Tomás I. Nido* y *Mariano Canales,* abogados de la peticionaria; *Hon. Procurador General Luis Negrón Fernández* y *J. G. Fernández Badillo, Procurador General Auxiliar,* abogados del interventor, querellado en el pleito principal.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

¿Tiene el Tribunal de Contribuciones jurisdicción sobre una solicitud de *mandamus* radicada por un contribuyente contra el Tesorero, si dicha petición se interpone después de transcurridos treinta días de la resolución administrativa del Tesorero negándose a actuar de acuerdo con lo solicitado por el contribuyente? El Tribunal de Contribuciones rindió en este caso una decisión en la negativa. En el caso de *A. J. Tristani, Sucrs., Inc., et al.* v. *Buscaglia,* núm. R–39, el Tribunal de Contribuciones resolvió la cuestión en igual forma y denegamos la solicitud de *certiorari* en el Recurso núm. 121. En el presente caso expedimos el auto con el fin de considerar de nuevo el problema.

En su petición ante el Tribunal de Contribuciones, radicada el 16 de diciembre de 1946, la peticionaria alegó que el 1ro. de septiembre de 1943 Axton Fisher Tobacco Co., Inc., su antecesora, compró en San Juan 250,000 sellos de rentas internas para cigarrillos, valorados en 13 centavos cada uno, por el precio de $32,500. Axton Fisher adhirió entonces estos sellos a las 250,000 cajetillas de cigarrillos que había recibido de los Estados Unidos continentales el

26 de junio de 1943. Luego, al examinar dichos cigarrillos con el propósito de venderlos en el mercado local, Axton Fisher descubrió que los mismos estaban completamente dañados debido a la acción del mar durante la travesía hacia Puerto Rico.

El 13 de mayo de 1944 Axton Fisher traspasó a la peticionaria su título e interés en dichos cigarrillos y en los sellos. En varias ocasiones durante 1944 y 1945 la peticionaria requirió al Tesorero para que presenciara la destrucción de los cigarrillos y para que expidiera nuevos sellos a cambio de aquellos que ya se habían adherido a los cigarrillos dañados. El Tesorero se negó a así hacerlo. El último requerimiento de la peticionaria fué hecho mediante carta del 11 de junio de.1945, negándose el Tesorero por carta del 5 de septiembre de 1945. Apoyándose en *Liggett & Myers Tobacco Co.* v. *Buscaglia, Tes.*, 64 D.P.R. 78, confirmado en *Buscaglia* v. *Liggett & Myers Tobacco Co.*, 149 F.2d 493 (C.C.A. 1, 1945), la peticionaria solicitó un auto de mandamus dirigido al Tesorero ordenándole· que destruyera estos cigarrillos con sus correspondientes sellos y que expidiera a la peticionaria en ·sustitución de éstos, 250,000 nuevos sellos de 13 centavos.

El Tribunal de Contribuciones declaró con lugar la moción del Tesorero para que se desestimara la petición. Resolvió que la peticionaria venía obligada a radicar su pleito ante el Tribunal de Contribuciones dentro de los 30 días siguientes a la resolución administrativa del Tesorero, rendida el 5 de septiembre de 1945. Toda vez que la petición no se radicó hasta.el 16 de diciembre de 1946—más de quince meses después de haberse emitido la resolución administrativa del Tesorero—el Tribunal de Contribuciones resolvió que carecía de jurisdicción.

█ Este caso está gobernado por las secciones 3 y 4 de la Ley núm. 169, Leyes de Puerto Rico, 1943 (pág. 601), que

creó el Tribunal de Contribuciones. La sección 3 dice en parte como sigue:

"Todas las acciones, recursos o procedimientos que deban substanciarse ante el Tribunal de Contribuciones de Puerto Rico se iniciarán mediante instancia jurada de la persona o entidad recurrente, formulada en nombre propio o por medio de representante legal debidamente autorizado, dentro de los treinta días siguientes a la fecha de la notificación que a la misma haga el Tesorero de Puerto Rico, en cualquiera de los siguientes casos: (1) tasación o retasación de propiedad mueble, tangible o intangible, o inmueble; (2) valoración hecha para fines de contribución de herencia y liquidación correspondiente de la participación de cada heredero en el caudal hereditario así como del importe de la contribución a pagarse en cada caso de contribución de herencia; (3) liquidación o reliquidación del importe de la contribución de ingresos, incluyendo notificaciones de deficiencias o de cualquier otra índole; (4) denegatorias de reembolso de cualquier contribución pagada indebidamente o en exceso o cobrada ilegalmente por cualquier otra causa; (5) requerimiento de pago por el Tesorero de Puerto Rico en virtud de cualquier arbitrio o contribución de licencia o de cualquiera otra clase de contribuciones o impuestos no especificados anteriormente . . ."

El primer párrafo de la sección 4 provee como sigue:

"El Tribunal de Contribuciones tendrá jurisdicción, de carácter exclusivo, para conocer de todos los casos sobre revisión de la tasación o retasación de la propiedad mueble, tangible o intangible, o inmueble, y de todas las acciones, procedimientos o recursos especiales o extraordinarios y reclamaciones de cualquier índole, relacionados con, o que afecten la imposición, cobro, pago, devolución o reembolso de toda clase de contribuciones, incluyendo arbitrios, contribución sobre ingresos, impuesto de la victoria, sobre herencia, licencias, y cualesquiera otras contribuciones o impuestos, así como para conocer de las reclamaciones de contribuciones pagadas indebidamente o en exceso o cobradas ilegalmente, cuyo reembolso se haya rehusado por el Tesorero. Esta jurisdicción, sin embargo, no podrá invocarse ante el Tribunal por persona alguna, hasta que sobre el asunto en discusión haya recaído la correspondiente resolución administrativa por parte del Tesorero de Puerto Rico, de acuerdo con la ley."

Si éste fuera un pleito ordinario de devolución de contribuciones caería, desde luego, bajo la sección 3(4), que

exige la radicación del pleito dentro de 30 días de la resolución administrativa. Pero no podemos convenir con el Tesorero en que éste es sencillamente un pleito sobre devolución de contribuciones. La Corte de Circuito dice en el caso de *Liggett & Myers* lo siguiente a la pág. 494: "Tales sellos de rentas internas no se compran como artículos filatélicos, sino para usarse como evidencia de que se han pagado contribuciones, impuestas por Puerto Rico con autoridad legal. Cuando estos sellos así adquiridos se adhieren y cancelan antes de que el producto sea embarcado a Puerto Rico . . . ha ocurrido en efecto un pago adelantado de la contribución. Según es de esperarse, ha ocurrido frecuentemente que el producto se ha destruído o ha sufrido daños tales que resultan en una pérdida total, antes de que sobre el mismo se haya devengado contribución alguna; frustrándose de esta manera el pretenso uso de los sellos cancelados indicativos del pago de una contribución legalmente adeudada.

"En tales casos, lo decente para el gobierno insular sería expedirle al embarcador o importador sellos de rentas internas de igual valor que los cancelados."

Este caso sería un pleito clásico de reintegro si la peticionaria hubiera limitado su petición a una reclamación de reintegro de un "pago adelantado de la contribución". Pero, según se desprende del caso de *Liggett & Myers,* cuando los sellos han sido adheridos a productos que se han dañado antes de que ocurra el evento tributable, la sustitución de los sellos, que son solamente "evidencia de que se han pagado contribuciones", envuelve un mero deber ministerial del Tesorero y no el reintegro de contribuciones propiamente dichas. Por consiguiente, la peticionaria tiene razón al sostener que este caso no está cubierto por la sección 3(4), que se aplica solamente a pleitos de reintegro.

■■■ También convenimos con la contribuyente en que la sección 3, por sí sola, no incluye en sus términos el pre-

sente caso. La sección 3 no dice incondicionalmente que todos los casos deberán radicarse en el Tribunal de Contribuciones dentro de 30 días después de haber el Tesorero emitido su resolución administrativa. Más bien dispone que todas las acciones deberán radicarse ante dicho tribunal *en cualquiera de los siguientes casos.* Entonces enumera cinco grupos de casos. Y esta petición de mandamus no cae dentro de ninguna de estas categorías.

Sin embargo, este caso no puede resolverse por el lenguaje de la sección 3 únicamente. Dicha sección debe leerse conjuntamente con la sección 4. Es más, este caso nunca hubiera podido radicarse a no ser por la sección 4: la jurisdicción del Tribunal de Contribuciones para expedir autos de mandamus emana de la disposición de la sección 4 confiriéndole a dicho tribunal "jurisdicción, de carácter exclusivo . . . de procedimientos o recursos especiales o extraordinarios . . . relacionados con o que afecten . . . toda clase de contribuciones . . .".

La sección 4 expresamente dispone que, igual que en otros tipos de casos, la jurisdicción del Tribunal de Contribuciones para expedir un remedio extraordinario como el mandamus no puede invocarse "hasta que sobre el asunto en discusión haya recaído la correspondiente resolución administrativa por parte del Tesorero de Puerto Rico, de acuerdo con la ley." La Ley núm. 169 es un estatuto complicado que trata de cubrir un número de situaciones. Ninguna de sus secciones funciona separadamente. El estatuto debe leerse en su totalidad si es que vamos a determinar la intención de la Legislatura al redactar disposiciones específicas del mismo. En la sección 4 la Legislatura por primera vez confirió al Tribunal de Contribuciones jurisdicción exclusiva para expedir remedios especiales. Pero indicó que estos remedios extraordinarios podrían concederse solamente dentro de la estructura de los otros requisitos procesales de la Ley núm. 169: dispuso en

la sección 4 que todos los remedios, incluyendo los especiales o los extraordinarios, deben estar precedidos de la resolución administrativa. Al así disponerlo, creemos que la Legislatura tuvo por intención que las secciones 3 y 4 se leyeran conjuntamente, de suerte que aun en aquellos casos no enumerados específicamente en los cinco párrafos de la sección 3, incluyendo los casos de remedios especiales, debe radicarse el recurso ante el Tribunal de Contribuciones dentro de los treinta días siguientes a la resolución administrativa del Tesorero.

Resolver lo contrario equivaldría a decidir que la Legislatura limitó en tiempo los remedios ordinarios pero no los extraordinarios. No vemos diferencia alguna entre las dos clases de casos en tanto en cuanto respecta a la necesidad de que las decisiones del Tesorero sean firmes. Es difícil creer que la Legislatura exigió una resolución administrativa del Tesorero para invocar la jurisdicción del Tribunal de Contribuciones en ambas clases de casos y sin embargo, en cuanto a los remedios especiales, tuvo la intención de no ponerle límite de tiempo alguno una vez emitida la resolución administrativa dentro del cual el contribuyente venía obligado a recurrir al Tribunal de Contribuciones. Una disposición específica a este efecto en la sección 4 hubiera facilitado la resolución de este caso. Sin embargo, llegamos a la misma conclusión cuando leemos conjuntamente las secciones 3 y 4 frente al texto de la Ley núm. 169 en su totalidad.

En vista del resultado a que hemos llegado, es innecesario que consideremos las otras cuestiones levantadas en este caso.(¹)

*La decisión del Tribunal de Contribuciones será confirmada.*

El Juez Asociado Sr. De Jesús no intervino.

--------

(¹)También alega el Tesorero (*a*) que bajo la Ley núm. 137, Leyes de Puerto Rico, 1945 (pág. 463), la peticionaria debe alegar y probar que ella, y no Axton Fisher, sufrió realmente el peso de pagar la contribución; (*b*) que aquí

ocurrió un evento tributable; v.g., la introducción en Puerto Rico; y (*c*) el mismo argumento que (*b*) excepto que el evento tributable fué la transferencia de título de los cigarrillos por Axton Fisher a la peticionaria. Además, aun cuando no fuera aplicable el término prescriptivo de 30 días, siempre debe considerarse en una petición de mandamus la cuestión de la incuria.